**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**UGURCAN KURT**,

*Petitioner*,

v.

**LUIS SOTO**, ***et al.***,

*Respondents*.

No. 26-cv-10238

**MEMORANDUM ORDER**

**O'HEARN, District Judge.**

**THIS MATTER** comes before the Court on the Petition for Writ of Habeas Corpus. (ECF No. 1). For the reasons set forth below, the Court will grant the Petition and order Respondents to provide Petitioner with a second bond hearing at which Respondents shall bear the burden of proof by clear and convincing evidence.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Petitioner Ugurcan Kurt is a native and citizen of Turkey who was admitted to the United States in B-2 visitor status on December 16, 2019. (Pet., ECF No. 1 ¶ 33). He later applied for asylum and withholding of removal and received employment authorization. (*Id.* ¶ 34). He alleges that he worked as a truck driver while residing in New Jersey, paid taxes, and developed substantial family and community ties. (*Id.*). On March 10, 2026, ICE detained Petitioner after he appeared for an asylum interview. (*Id.* ¶ 36). He has remained continuously detained in New Jersey since that date. (*Id.*).

On March 17, 2026, seven days after he was detained, Petitioner appeared with counsel for a bond hearing before an Immigration Judge ("IJ"). (Pet. ¶¶ 37–39). Consistent with the regulations

governing bond determinations under § 1226(a), Petitioner bore the burden of establishing that he was neither a danger to the community nor a flight risk. At that hearing, the IJ considered evidence regarding Petitioner's employment, fixed residence, family and community ties, and a 2022 New Jersey criminal matter which resulted in dismissal of the charges after Petitioner successfully completed a pretrial intervention program. (*Id.* ¶¶ 35, 37, 47). The IJ denied bond, finding that Petitioner had not carried his burden. (*Id.* ¶¶ 38–39).

Petitioner thereafter filed his first petition for a writ of habeas corpus on April 7, 2026, principally challenging the placement of the burden of proof on him at the March 17 bond hearing. (*Id.* ¶ 40). The Court denied that petition after concluding that *Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274 (3d Cir. 2018), foreclosed Petitioner's contention that due process required the Government to bear the burden at an initial § 1226(a) bond hearing. *Kurt v. Soto*, No. 26-03676 (D.N.J. May 26, 2026), ECF No. 12.

Petitioner's removal proceedings continued after that decision. His application for adjustment of status was denied on May 21, 2026, and, on June 8, 2026, the IJ ordered him removed to Turkey. (Pet., ECF No. 1 ¶ 42). Petitioner timely appealed that decision to the Board of Immigration Appeals ("BIA") on July 7, 2026. (*Id.* ¶ 43). The parties agree that the appeal remains pending and, consequently, that the removal order is not administratively final and Petitioner remains detained pursuant to § 1226(a). (Gov't Supp. Br., ECF No. 6 at 1).

On August 12, 2026, after approximately five months of continuous detention, Petitioner filed the present habeas petition. (ECF No. 1). Unlike his prior petition, Petitioner does not ask the Court to revisit the burden employed at his initial March 17 bond hearing or to review the IJ's discretionary determination as to bond. Rather, relying on *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203 (3d Cir. 2020), he contends that his detention has become

unreasonably prolonged such that due process now requires a new bond hearing at which the Government must justify continued detention by clear and convincing evidence. (*Id.* ¶¶ 16–26, 50–57).

The Court directed supplemental briefing on Petitioner's prolonged-detention claim. (ECF No. 5). Respondents filed their supplemental brief on August 27, 2026, arguing principally that *Borbot* forecloses relief because Petitioner has already received the process contemplated by § 1226(a) and has been detained for considerably less time than the petitioner in *Borbot*. (ECF No. 6). Petitioner replied on September 2, 2026, arguing that *Borbot* expressly left open whether prolonged § 1226(a) detention may require a new bond hearing and that the *German Santos* factors favor granting a new bond hearing. (ECF No. 7).

## II. JURISDICTION AND LEGAL STANDARD

District courts have jurisdiction under 28 U.S.C. § 2241 to hear claims that an immigration detainee is "in custody in violation of the Constitution or laws or treaties of the United States." § 2241(c)(3); *see also Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 439 (3d Cir. 2021); *Tuser E. v. Rodriguez*, 370 F. Supp. 3d 435, 440 (D.N.J. 2019). Petitioners have the burden to demonstrate that their detention violates the Constitution or federal law. *See, e.g.*, § 2241(c)(3); *Zumba v. Bondi*, No. 25-14626, 2025 WL 2753496, at *4 (D.N.J. Sept. 26, 2025); *Sarkisov v. Underwood*, No. 24-88, 2025 WL 1640826, at *1 (W.D. Pa. May 5, 2025). "The court shall summarily hear and determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

Though Respondents do not assert that this Court lacks jurisdiction, the Court has an independent obligation to ensure that subject matter jurisdiction exists. *E.g., Great W. Mining & Min. Co. v. Fox Rothschild LLP,* 615 F.3d 159, 163 (3d Cir. 2010). As Petitioner was detained in

New Jersey at the time he filed his Petition and challenges the legality of that detention on federal constitutional and statutory grounds, this Court has jurisdiction to consider his claims. Finally, no statute divests this Court of jurisdiction because Petitioner does not seek review of the Attorney General's exercise of discretion; rather, he seeks to challenge "the statutory framework that permits [his] detention without bail." *Jennings v. Rodriguez*, 583 U.S. 281, 295–96 (2018). Respondents also do not assert a failure to exhaust administrative remedies but, in any event, exhaustion is not required where the BIA's "lack of jurisdiction to adjudicate constitutional issues render[s] it incapable of addressing the due process claim presented." *Qatanani v. Att'y Gen. U.S.*, 144 F.4th 485, 500 (3d Cir. 2025) (quotation marks omitted).

## III. DISCUSSION

This case requires the Court to squarely address a question that it has so far reserved judgment on[1] and which the Third Circuit has left open: when, if ever, does the Due Process Clause entitle a noncitizen properly detained under § 1226(a) to a second bond hearing at which the Government bears the burden of proof? For the reasons set forth below, the Court holds that the Third Circuit's decision in *German Santos*, 965 F.3d 203, supplies the answer to that question and that the factors set forth in that case favor granting Petitioner a second bond hearing.

### A. The Statutory Framework and *Borbot*'s Open Question

Noncitizens detained under § 1226(a) are entitled to a bond hearing under the statute's implementing regulations and the Due Process Clause. *See Buele Morocho v. Warden Phila. FDC*,

[1] Though Petitioner relies on this Court's decision in *Zheng v. Rokosky*, 826 F. Supp. 3d 545 (D.N.J. 2026), that case did not "present a challenge based on duration alone, but rather one involving multiple constitutional violations" including an initially unlawful detention under 8 U.S.C. § 1225(b) followed by a bond hearing which the court found to be fundamentally unfair. 826 F. Supp. 3d at 560 n.12. *Zheng* is therefore distinguishable from the prolonged-detention claim presented here.

___ F.4th ___, No. 26-1150, 2026 WL 2546223, at *8–10 (3d Cir. Aug. 28, 2026); 8 C.F.R. §§ 236.1, 1003.19. Under BIA precedent, the detainee bears the burden of demonstrating that their release would not pose a danger and that they are likely to appear for future proceedings. *See Matter of Guerra*, 24 I. & N. Dec. 37, 38, 40 (B.I.A. 2006). A detainee may thereafter seek a bond redetermination "upon a showing that the alien's circumstances have changed materially since the prior bond redetermination." 8 C.F.R. § 1003.19(e).

The Third Circuit considered this framework in *Borbot*, 906 F.3d 274. There, the petitioner was denied bond following a § 1226(a) hearing, the BIA affirmed that denial, and the IJ later denied his request for reconsideration. *Id.* at 276–77. Approximately fourteen months into his detention, he filed a habeas petition arguing that the duration of his confinement entitled him to a second bond hearing at which the Government would bear the burden of proving that detention remained necessary. *Id.* The district court denied the petition and the Third Circuit affirmed.

In doing so, the Third Circuit distinguished its prior decisions addressing prolonged mandatory detention under § 1226(c), which applies to noncitizens with specified criminal histories. *See Diop v. ICE/Homeland Sec.*, 656 F.3d 221 (3d Cir. 2011), *abrogated in part by Jennings*, 583 U.S. 281; *Chavez-Alvarez v. Warden York Cnty. Prison*, 783 F.3d 469 (3d Cir. 2015), *abrogated in part by Jennings*, 583 U.S. 281. The Third Circuit had held in those cases that due process may require an individualized bond hearing once detention under § 1226(c)—which affords no ordinary opportunity for release on bond—becomes unreasonably prolonged.[2] Section 1226(a), by contrast, provides an individualized bond determination at the outset. The Third

[2] The court also "invoked the constitutional-avoidance canon to construe the statute as limiting detention without a bond hearing," *German Santos*, 965 F.3d at 208. The Supreme Court later abrogated this statutory construction but did not disturb the underlying constitutional analysis. *Id.*

Circuit therefore held that "the reasonableness inquiry" it had employed in *Diop* and *Chavez-Alvarez* was "inappropriate in the context of § 1226(a)" where the detainee had already received "meaningful process." *Borbot*, 906 F.3d at 278–79. The court found no authority "to suggest that duration alone can sustain a due process challenge" by a detainee who has been afforded that process. *Id.* at 277, 279. The court also acknowledged that "*Diop* places the burden of proof on the government in § 1226(c) cases, whereas under § 1226(a) the burden remains on the detainee at all times" but it "perceive[d] no problem with this distinction." *Id.* at 279.

At the same time, however, the court acknowledged the concern that, "despite an initial bond hearing, detention under § 1226(a) might become unreasonably prolonged, whether by virtue of government delay or some other cause." *Id.* at 280. Because the record before it did not establish such circumstances, the court expressly declined to decide "when, if ever, the Due Process Clause might entitle an alien detained under § 1226(a) to a new bond hearing." *Id.*

That reservation has produced differing approaches among district courts in this Circuit. Some courts have reasonably read *Borbot* as requiring a second hearing as a matter of due process only in an "extreme case." *Onuwa v. Field Off. Dir.*, No. 26-2403, 2026 WL 772435, at *2 (D.N.J. Mar. 19, 2026). *Onuwa* rejected a prolonged detention claim despite detention of nearly a year, reasoning that because the petitioner in *Borbot* had been detained for more than two years by the time the Third Circuit decided his appeal, "even a two year detention period did not in and of itself warrant relief" given the procedural mechanisms available to § 1226(a) detainees. *Id.*; *see also Viantsko v. Lowe*, No. 26-563, 2026 WL 963038, at *3–4 (M.D. Pa. Apr. 9, 2026) (citing *Onuwa* in rejecting similar claim after two months of detention following a bond hearing); *A.S. v. Soto*, No. 26-08346 (D.N.J. Sept. 8, 2026) (rejecting prolonged detention claim after seven months). Respondents rely on that line of authority here. (Gov't Supp. Br., ECF No. 6 at 2–3).

Other courts, however, have read *Borbot* together with subsequent precedent and applied the factors articulated in *German Santos* to § 1226(a) detention. *See A.J.R. v. Rokosky*, No. 25-17279, 2026 WL 592136, at *2–3 (D.N.J. Mar. 3, 2026) (ordering new bond hearing after eight months of detention); *Fadel v. Warden of Moshannon Valley ICE Processing Ctr.*, No. 26-00625, 2026 WL 1649901, at *2–3 (W.D. Pa. June 8, 2026) (nine months of detention); *Avalos-Orellana v. Mullin*, No. 26-00940, 2026 WL 2529491, at *2–3 (W.D. Pa. Aug. 27, 2026) (one year of detention); *Gonzalez v. Oddo*, No. 25-424, 2026 WL 797423, at *4–6 (W.D. Pa. Mar. 23, 2026) (three years of detention).[3] As explained below, the Court agrees with these courts that *German Santos* answers the question that *Borbot* reserved.

### B. *German Santos* Supplies the Framework for the Question *Borbot* Reserved

Two years after *Borbot*, the Third Circuit decided *German Santos*. There, a noncitizen detained under § 1226(c) had been confined for more than two-and-a-half years without an individualized determination that his detention was necessary. 965 F.3d at 206. The Third Circuit held that, while § 1226(c) does not limit detention, the Due Process Clause imposes an independent constitutional limitation; once detention becomes unreasonably prolonged, the detainee is entitled to a bond hearing. *Id.* at 209–13.

*German Santos* identified several considerations relevant to determining when detention becomes constitutionally unreasonable: (1) the duration of detention; (2) whether detention is likely to continue; (3) the reasons for delay, including whether either party acted in bad faith; and (4) whether the conditions of confinement are meaningfully different from criminal punishment. *Id.* at 211–12. Duration is the "most important" consideration. *Id.* at 211. Although the Third

[3] The Court notes that, as in *Zheng*, the petitioners in *A.J.R.* and *Fadel* only received initial bond hearings through habeas following unlawful detention under § 1225 and are thus also distinguishable from *Borbot* in that regard.

Circuit expressly declined to establish a bright-line rule, it reiterated that detention becomes "more and more suspect after five months." *Id.*

The court also addressed what process is required once detention becomes unreasonably prolonged: the detainee is entitled to a bond hearing at which the Government must justify continued detention by clear and convincing evidence**.** *Id.* at 213–14. That is because "when a party stands to lose his liberty, even temporarily, we hold the Government to a higher burden of proof." *Id.* at 214.

Reading *Borbot* to impose a years-long threshold before a § 1226(a) detainee can receive similar process would thus produce the illogical, if not absurd, result that noncitizens with serious criminal histories receive greater constitutional protection from prolonged detention than those without a criminal record. The burden of proof "serves to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision." *Addington v. Texas*, 441 U.S. 418, 423 (1979). Whether the burden is placed on the detainee or on the Government by clear and convincing evidence will often be dispositive as to bond. Here, had Petitioner been detained under § 1226(c), his current detention of more than six months would likely entitle him to a bond hearing under *German Santos* at which the Government bears the burden by clear and convincing evidence. And although the IJ found that Petitioner had not met his burden at his initial bond hearing, the IJ could easily reach a different conclusion on the same record if the burden was placed on the Government to justify detention by clear and convincing evidence.

Indeed, the First Circuit recognized this tension in *Hernandez-Lara v. Lyons*, 10 F.4th 19, 34–35 (1st Cir. 2021). In holding that the Government *always* bears the burden in § 1226(a) hearings, the First Circuit observed that *German Santos* "casts doubt" on *Borbot* and explained

that it "struggle[d] to see why" the Third Circuit would have required the heightened protection of a bond hearing at which the Government bears the burden by clear and convincing evidence "if its statement in *Borbot*—that the procedures under section 1226(a) provide 'meaningful process'—indicates that those procedures comply with due process." *Id.* Although *Hernandez-Lara* is of course not binding on this Court, this reasoning of a sister circuit persuasively identifies the difficulty with treating *Borbot* as establishing that an initial § 1226(a) hearing remains constitutionally sufficient regardless of how long detention continues thereafter or as imposing a bright-line rule for the duration of detention. The better reconciliation of these cases is that *Borbot* establishes that there is nothing constitutionally problematic with placing the burden on the detainee at the outset of detention and *German Santos* supplies the framework for determining "when, if ever, the Due Process Clause might entitle an alien detained under § 1226(a) to a new bond hearing." 906 F.3d at 280; *see also Hernandez-Lara,* 10 F.4th at 59 (Lynch, J., dissenting) ("In holding that the burden of proof should eventually shift to the government once its interest in continued detention attenuates, *German Santos* … accept[s] that the burden may lie at first with the noncitizen.").

This conclusion is also consistent with the Second Circuit's decision in *Velasco Lopez v. Decker*, 978 F.3d 842 (2d Cir. 2020). There, the court held that a noncitizen detained under § 1226(a) for fifteen months was entitled to a new bond hearing at which the Government bore the burden of justifying continued detention by clear and convincing evidence. *Id.* at 855–57. The court similarly reasoned that "individuals subject to prolonged detention under § 1226(a) must be afforded process in addition to that provided by the ordinary bail hearing, just as … criminals subjected to prolonged detention under § 1226(c) may be entitled to further process." *Id.* at 854. And in determining the appropriate burden of proof at that later hearing, the Second Circuit

expressly relied on *German Santos*. *Id.* at 855 n.14. Although *Velasco Lopez* did not address *Borbot*, its reasoning supports the distinction drawn here between the process sufficient at the outset of § 1226(a) detention and the heightened safeguards that are necessary as detention grows prolonged.

Finally, reading *Borbot* in this way also accords with the Supreme Court and Third Circuit's broader caution concerning prolonged civil detention supported principally by administrative process. In *Zadvydas v. Davis*, the Supreme Court identified a constitutional concern where "the sole procedural protections available to the alien are found in administrative proceedings, where the alien bears the burden of proving he is not dangerous, without (in the Government's view) significant later judicial review." 533 U.S. 678, 692 (2001). The Court emphasized that "the Constitution may well preclude granting an administrative body the unreviewable authority to make determinations implicating fundamental rights." *Id.* (quotation marks omitted) (quoting *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 450 (1985)). The Third Circuit echoed that concern in *Guerrero-Sanchez v. Warden York Cnty. Prison*, 905 F.3d 208, 226 (3d Cir. 2018), *abrogated by Johnson v. Arteaga-Martinez*, 596 U.S. 573 (2022), when evaluating administrative custody reviews under § 1231(a)(6). Notably, the Third Circuit in that case also required a bond hearing for noncitizens subject to prolonged detention under § 1231 at which the Government bore the burden of proof by clear and convincing evidence and noted that detention will generally become prolonged after six months. *Id.*[4]

[4] Although the Supreme Court abrogated the Third Circuit's statutory interpretation in *Johnson*, it did not disturb the underlying constitutional analysis, 596 U.S. at 583, which thus remains highly persuasive in this as-applied challenge. *See German Santos*, 965 F.3d at 214 ("Whether the bond hearing occurs before or after a final order of removal, the alien stands to lose his physical freedom, even if temporarily.").

The procedures here are more robust than the administrative custody reviews considered in *Zadvydas* and *Guerrero-Sanchez*. Under § 1226(a), noncitizens receive a bond hearing before an ostensibly neutral IJ and can appeal that determination to the BIA. But these proceedings still take place entirely within the Executive Branch and § 1226(e) restricts "significant later judicial review," *Zadvydas*, 533 U.S. at 692, of these administrative determinations. Thus, the same concerns that arose with the detention schemes in those cases are present here when detention becomes prolonged.[5]

The Court is mindful of its duty to faithfully apply controlling Third Circuit precedent. It does not conclude that *German Santos* overruled *Borbot*, nor is such a conclusion necessary. *Borbot* expressly reserved decision on the question of when § 1226(a) detention might become unreasonably prolonged and thus require additional procedural safeguards. 906 F.3d at 280. Two years later, *German Santos* articulated a fact-specific constitutional framework to determine when immigration detention becomes unreasonably prolonged. 965 F.3d at 211–13. The Court therefore concludes that *German Santos* supplies the appropriate framework for answering the question *Borbot* left open.[6]

---

[5] Nor does the availability of a bond redetermination under 8 C.F.R. § 1003.19(e) resolve those concerns. Respondents emphasize that Petitioner "may still seek a new bond hearing based on changed circumstances." (Gov't Supp. Br. at 2–3, ECF No. 6). But that argument lacks merit since duration alone is not a changed circumstance. *See Velasco Lopez,* 978 F.3d at 852 ("There is no administrative mechanism by which Velasco Lopez could have challenged his detention on the ground that it reached an unreasonable length.").

[6] Indeed, the court in *Borbot* appears to have engaged in an implicit *German Santos*-like analysis. The court emphasized that there was no allegation of unreasonable delay and that "the conclusion of his removal proceedings—and accordingly the end of his detention—appears to be forthcoming." 906 F.3d at 277. Put differently, the likelihood of continued detention, the second *German Santos* factor, did not favor granting a new hearing based on the particular facts of that case.

**C. Petitioner's Detention Has Become Unreasonably Prolonged**

Respondents have not addressed the *German Santos* factors in their supplemental brief. They simply acknowledge that the appropriate remedy under that case is generally a new bond hearing, not immediate release. (ECF No. 6 at 3). Applying the *German Santos* factors here, the Court concludes that Petitioner is entitled to a second bond hearing at which the Government bears the burden of proof.

First, the duration of detention weighs in Petitioner's favor. He has been detained for nearly six months following his March 17, 2026, bond hearing.[7] *German Santos* identified duration as the "most important" consideration and explained that detention becomes "more and more suspect after five months." 965 F.3d at 211.

Second, his detention is likely to continue because "[t]he immigration courts are overburdened, and this causes significant delay." *A.J.R.*, 2026 WL 592136, at *3. The IJ ordered Petitioner removed to Turkey on June 8, 2026, but Petitioner timely appealed to the BIA on July 7, 2026. Respondents acknowledge that the appeal remains pending and that the removal order is therefore not final. (Gov't Supp. Br., ECF No. 6 at 1). These proceedings could take many months if not longer. Furthermore, Petitioner will be able to petition a court of appeals for review of his final removal order.

Third, there are no allegations that Petitioner has acted in bad faith to delay his proceedings. Petitioner timely invoked the administrative appellate process available to him after the IJ ordered

---

[7] Detention must be measured from the date of the last constitutionally adequate bond hearing, otherwise "an individual detained longer than six months (or whatever timeframe would trigger a required bond hearing in that individual's unique circumstances) who is dissatisfied with the results of his bond hearing could simply request a new bond hearing every day thereafter until he receives a more favorable outcome." *Viantsko*, 2026 WL 963038, at *4.

his removal. *German Santos* instructs that courts should not hold a noncitizen's good-faith pursuit of available legal remedies against the detainee in assessing the reasonableness of continued confinement. 965 F.3d at 211–12. Nor are there any allegations of delay on the part of the Government. This factor is neutral.

Finally, the conditions of confinement favor Petitioner. He remains confined at Delaney Hall, a secure civil detention facility, under conditions which are undisputedly indistinguishable from criminal punishment. *See German Santos*, 965 F.3d at 212–13.

In sum, the *German Santos* factors favor granting Petitioner a second bond hearing at which the Government bears the burden of proof by clear and convincing evidence.

## IV. CONCLUSION

For the reasons set forth above, the Court concludes that *Borbot* does not foreclose Petitioner's claim. *Borbot* expressly left open the question of when detention becomes unreasonably prolonged such that the Due Process Clause requires additional process. *German Santos* supplies the framework for answering that question. Applying those factors, the Court concludes that, on this record, Petitioner is entitled to another bond hearing at which the Government must bear the burden to justify continued detention.

*****

For the foregoing reasons,

**IT IS HEREBY** on this 14th day of September, 2026,

**ORDERED** that the Petition for Writ of Habeas Corpus is **GRANTED**; and it is further

**ORDERED** that Respondents shall provide Petitioner with a bond hearing before an IJ within seven (7) days of this Order at which the Government shall bear the burden of proof by clear and convincing evidence; and it is further

**ORDERED** that, within twenty-four hours of the bond hearing, Respondents shall file a letter on the docket advising the Court of the outcome of the hearing. Respondents shall also file a copy of the IJ's bond order. If the order is not available, Respondents shall advise the Court when they intend to file the same; and it is finally

**ORDERED** that, if bond is denied, Petitioner may file any amended petition within fourteen (14) days.

Christine P. O'Hearn

**CHRISTINE P. O'HEARN**
**United States District Judge**